500 F.2d 75
 DIAPULSE CORPORATION OF AMERICA, also known as the Diapulse
Manufacturing Corporation of America, a
corporation, Plaintiff-Appellant,
v.
FOOD AND DRUG ADMINISTRATION OF the DEPARTMENT OF HEALTH,
EDUCATION AND WELFARE, Defendant-Appellee.
 No. 620, Docket 73-2593.
 United States Court of Appeals, Second Circuit.
 Argued March 4, 1974.
Decided May 9, 1974, Supplemental Opinion June 18, 1974.
 
 Copal Mintz, New York City, for plaintiff-appellant.
 Donald Etra, Dept. of Justice, Washington, D.C. (Irving Jaffe, Acting Asst. Atty. Gen., Edward J. Boyd, U.S. Atty., Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., on the brief), for defendant-appellee.
 Before LUMBARD, HAYS, and OAKES, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 Claiming that the Food and Drug Administration (FDA) was unlawfully withholding material to which it was entitled under the Freedom of Information Act, 5 U.S.C. 552, by charging unlawful fees, Diapulse Corporation of America instituted this action in the Eastern District of New York on September 4, 1973. On September 17, Judge Dooling granted the FDA's motion for summary judgment on the ground that there had been no improper refusal of access to records which the Act requires be disclosed. Since we find that the fees the FDA required of Diapulse were not authorized, we vacate and remand.
 
 I.
 
 2
 This appeal brings before us yet another skirmish between Diapulse and the FDA over Diapulse's marketing of a diathermy unit. Previously we have upheld a condemnation order entered against the device under the Federal Food, Drug, and Cosmetic Act, 21U.S.C. 301-392, after a jury had found that the device was mislabeled and that 49 claims made for it were misleading. United States v. Diapulse Manufacturing Corp. of America, 389 F.2d 612 (2d Cir.), cert. denied, 392 U.S. 907, 88 S.Ct. 2059, 20 L.Ed.2d 1365 (1968). Later we affirmed preliminary and permanent injunctions against shipment of the device in interstate commerce unless the FDA approved the labeling for the machine. United States v. Diapulse Corp. of America, 457 F.2d 25 (2d Cir. 1972); United States v. Diapulse Corp. of America, 485 F.2d 677 (2d Cir. 1973) (affirmed without opinion), cert. denied, 416 U.S. 938, 94 S.Ct. 1938, 40 L.Ed.2d 288 (1974). Finally the government has brought criminal contempt charges, which were scheduled to go to trial in April against Diapulse for violating both injunctions. According to Diapulse's complaint, it hopes that the material it seeks will show that the FDA has engaged in a wide range of discriminatory enforcement activities against it.
 
 
 3
 The facts surrounding Diapulse's efforts to gain access to material in the FDA's files are not disputed. On June 11, 1973, Jesse Ross, the president of Diapulse, sent a letter to the Acting Commissioner of the FDA which demanded in eight paragraphs a broad range of FDA documents which referred to Diapulse. Although the regulations of the Department of Health, Education, and Welfare (HEW), of which the FDA is an operating agency, say that it is the Department's policy that requests for information be answered within ten days, 45 C.F.R. 5.51(c) (1973), Ross had to write two follow-up letters, before he received a reply on July 27 from David M. Link, the Director of the FDA's Office of Medical Devices. Link stated that thousands of documents, not all subject to disclosure under the Freedom of Information Act, would have to be searched to answer Ross' request and, therefore, Link asked that Ross narrow his request. To aid Ross, Link enclosed a copy of the FDA's proposed public information regulations, 37 Fed.Reg. 9128 (1972); and suggested Ross contact Robert Kennedy of the Officer of Medical Devices for assistance in gathering material. Link also said that search fees would depend on who had to do the search and that Diapulse might have to pay the salary of the person who did the searching.
 
 
 4
 On August 7, Ross telephoned Kennedy and said that he would like to start by examining the 'factory jackets' relating to the Diapulse device and Diapulse Corporation. The factory jackets are the records the FDA has concerning a particular company and they contain a wide variety of documents including inspection reports, letters of inquiry and answers, and various internal memoranda. Kennedy told Ross that he would have to collect and remove from the factory jackets any material not subject to disclosure under the Act prior to Ross' examination. Kennedy also told Ross that the inspection would take from four to six days and a fee of $103.60 per day would be charged as reimbursement for the agency's cost. He also said that a letter of intent to pay the fee was necessary before they could proceed. When Ross objected to paying the fee, Kennedy suggested that he discuss the matter with Ruth Cockerham, the FDA's Freedom of Information Officer. In a letter to Cockerham dated August 7, Ross requested a waiver of the payment requirement on the ground that Diapulse could not afford to pay. On August 22 Charles H. Dick, the FDA's Assistant Commissioner for Public Affairs, in reply to Ross' request said that the FDA's proposed regulations provided for a waiver of search and copying fees upon adequate showing that the person making the request was indigent and that there was a strong public interest justification for disclosure. Dick concluded by saying that more complete information concerning Diapulse's financial status would be necessary before a decision concerning its waiver request could be made.
 
 
 5
 Instead of responding to this letter by sending financial information concerning Diapulse, Ross on August 30 sent a letter to Alexander M. Schmidt, the Commissioner of the FDA, requesting more material in addition to that previously demanded. Schmidt replied under date of September 4, the same day Diapulse instituted this case. He maintained that the FDA had acted properly in its enforcement efforts against Diapulse. Concerning Ross' request for information, Schmidt, referred to the proposed regulations already sent, the proposals contained in Link's letter, and the statement in Dick's letter regarding waiver of fees, saying the letters and regulations 'need no further comment.'
 
 II.
 
 6
 The issue before us is whether the FDA could lawfully charge Diapulse a fee of $103.60 a day for the cost fo Kennedy examining the material in the factory jackets and deleting material exempt from the disclosure requirements of the Freedom of Information Act. Not before us is a question of whether any of the material Ross and Diapulse sought is actually subject to disclosure under the Act. See generally EPA v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); Rose v. Department of Air Force, 495 F.2d 261 (2d Cir. 1974). Thus far, the FDA has not actually refused to let Ross examine any particular document.
 
 
 7
 We must first consider the FDA's claim that Diapulse is barred from raising the issue because of a failure to exhaust administrative remedies. The Department of Health, Education, and Welfare has promulgated regulations which provide for administrative review of denials of requests for information, 45 C.F.R. 5.80-.85 (1973). Under these regulations a person whose request for information has been denied has thirty days to seek review. In this case the review would be by the Commissioner of the FDA, as head of an operating agency. Under amendments to 45 C.F.R. 5.82, effective August 17, 1973, the Assistant Secretary of HEW for Public Affairs must concur in any decision on review which denies a request for information.
 
 
 8
 It is clear that Diapulse has not sought formal review of the validity of the fees by the Commissioner of the FDA. It is also clear, however, by his letter of September 4 that the Commissioner supported the position his subordinates had taken on this issue, but there is no indication that the Assistant Secretary for Public Affairs has approved FDA's stand on fees. We are thus faced with the question of whether Diapulse's failure to exhaust administrative remedies within HEW bars judicial review at this time.
 
 
 9
 We have little doubt that as a general matter persons requesting information should exhaust administrative remedies prior to seeking judicial review. See Tuchinsky v. Selective Service System, 418 F.2d 155, 158 (7th Cir. 1969); cf. Renegotiation Board v. Bannercraft Clothing Co., 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974). See generally Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). But the doctrine of exhaustion of administrative remedies is subject to exceptions, and 'application of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved.' McKart v. United States, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). Among the purposes for the doctrine that the Supreme Court recited in McKart are avoiding premature interruption of the administrative process, allowing the agency to develop the necessary factual record, giving the agency the first opportunity to exercise its discretion or to apply its expertise, and promoting efficiency by letting the administrative process carry through to its conclusion. Id. at 193-194.
 
 
 10
 Here, of course, there is no administrative proceeding to interrupt since Diapulse has chosen not to seek administrative review of the validity of the fees the FDA staff proposed. Since the issue here is whether the proposed fees were legally authorized, there is no need for the agency to develop a detailed factual record for purposes of decision, nor is there any area for the exercise of discretion. And, on this legal question of authorization, agency expertise is of little help to a reviewing court. See McKart, supra, 395 U.S. at 197-198.
 
 
 11
 Allowing judicial review here will not unduly disrupt the scheme of administrative review that HEW has promulgated. The plan was undoubtedly designed to deal with the general sort of Freedom of Information Act problem arising from the refusal of the agency staff to allow a member of the public to examine material. Such cases often combine factual and legal questions. While many of the usual reasons for requiring exhaustion may not be present, since review in the district courts under 5 U.S.C. 552(a)(3) is de novo, courts nevertheless should allow agencies the opportunity to review denials of requests and to correct their errors prior to allowing judicial review.
 
 
 12
 Here, however, we are presented with a legal question on which the Commissioner of the FDA has already issued his opinion. There is no chance, therefore, that the FDA will correct any possible error in denying Diapulse access to the factory jackets unless the fees are paid. Whether the Assistant Secretary for Public Affairs of HEW would support the FDA position on this matter is problematic, but that officer was added as a reviewing authority only by recent amendments. It seems likely that neither of the parties to this case were aware of the amendments since counsel for the FDA quotes from the unamended regulations. To require exhaustion of a source of review which neither side knew about when judicial review has proceeded this far would be overly harsh and wasteful. We, therefore, conclude that on the facts of this particular case exhaustion of administrative remedies was not necessary.[1]
 
 III.
 
 13
 Turning to the merits, we think that it is clear that an attempt to condition Ross' examination upon payment of unlawful fees would be the sort of improper withholding of material that 5 U.S.C. 552(a)(3) gives the district courts jurisdiction to enjoin. Section 552(a)(3) allows agencies to charge 'fees to the extent authorized by statute' in making records available to persons under that provision. The House Report accompanying the Act makes it clear that 31 U.S.C. 483a (then 5 U.S.C. 140) was authority for agencies to charge search and copying fees where information is requested. H.R.Rep.No. 1497, 89th Cong., 2d Sess. (1966), in 2 (1966) U.S.Code Cong. & Admin.News, pp. 2418, 2425-2426. See also Reinoehl v. Hershey, 426 F.2d 815 (9th Cir. 1970); Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act, in 20 Ad.L.Rev. 263, 293-95 (1968). Section 483a provides that it is the sense of Congress that the furnishing of documents and other services to those not engaged in government business should be self-sustaining to the fullest extent possible. Heads of agencies are authorized to prescribe 'by regulation' fees for such services after taking into account the direct and indirect cost to the government, value to the recipient, the public interest served, and other pertinent considerations. The issue here is whether the FDA has promulgated regulations which authorize the $103.60 a day charge that FDA officials attempted to charge Diapulse.
 
 
 14
 It is noteworthy that the FDA staff in its correspondence with Ross only cited the FDA's proposed regulations. Those regulations authorize, among others, the following fees:
 
 
 15
 Search for records and deletion of nondisclosable data: $4 per hour. Where a substantial amount of time is spent by higher salaried professional, managerial, or program personnel in searching for or producing requested documents or in deleting non-disclosabel data and information, special rates not to exceed the cost to the agency of such services will be determined and charged . . ..
 
 
 16
 37 Fed.Reg. 9132. On the other hand, the regulations then in effect provide:
 
 
 17
 (a) Certain routine information is provided to the general public at no charge; however, special informational services involving more than routine investigation and allocation of staff time are subject to fees as necessary to recover costs to the Government.
 
 
 18
 (b) Charges for special services regarding Food and Drug Administration records are as follows:
 
 
 19
 (1) Search for records: $3 per hour . . ..
 
 
 20
 21 C.F.R. 2.115 (1973).
 
 
 21
 For different reasons, both parties agree that the $3 per hour search fee authorized by 2.115(b)(1) is not applicable to this case. The fee sought to be charged in this case was not a fee for searching for the factory jackets in the sense of finding them, rather the fee was for (in the words of the proposed regulation) 'deletion of nondisclosable data.' We think that this is a reasonable distinction and we see no reason to quarrel with the agency's interpretation of its regulation.
 
 
 22
 The FDA, however, argues that the fee for deletion of material it tried to charge was authorized by 21 C.F.R. 2.115(a), quoted above. We disagree. That provision is most naturally read as a statement of a general policy that fees will be charged for special services; 2.115(b) authorizes fees for these services. The FDA's interpretation of 2.115(a) would turn it into general authority to charge any fee for any service it renders to a private citizen. We think that the reuqirement of 31 U.S.C. 483a that fees be authorized by regulation requires that the regulations be more specific than this. Similarly, we think the HEW regulation, 45 C.F.R. 5.60 (1973), is too vague to support the fees at issue here. We, therefore, conclude that the fees the FDA attempted to charge were not authorized.[2]
 
 
 23
 Accordingly, the judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion including directing that the FDA furnish material to which Diapulse is entitled under the Freedom of Information Act without charging unauthorized fees for the segregation of nondisclosable material.
 
 
 24
 ON MOTION BY THE FOOD AND DRUG ADMINISTRATION TO AMEND OPINION.
 
 PER CURIAM:
 
 25
 On May 9, 1974, we filed an opinion in this case, 500 F.2d at 75. We held there that Diapulse did not have to exhaust administrative remedies to seek judicial review of its claim that the fees the F.D.A. attempted to charge it for segregating material exempt from disclosure under the Freedom of Information Act, 5 U.S.C. 552, were not authorized. We said that the Commissioner of the F.D.A., who as head of an 'operating agency' reviewed denials of requests for information, had already expressed his opinion on the subject. We recognized that recent amendments to the review procedures required the Assistant H.E.W. Secretary for Public Affairs to concur in any denial of requests for information, but said that since the counsel for F.D.A. quoted from the unamended regulations, it was probable that the parties had not known of this additional source of administrative review and that, therefore, it would be 'harsh and wasteful' to require exhaustion of this source when judicial review had proceeded so far. On the merits we held, Judge Hays dissenting, that the fees attempted to be charged were unauthorized.
 
 
 26
 In a letter dated May 22, counsel for the F.D.A. challenged for the first time the proposition that the Commissioner of the F.D.A. reviews requests for information under the Act and asks that we amend the opinion in some unspecified manner. The argument is that although the F.D.A. is an operating agency, it is also part of the Public Health Service, 45 C.F.R. 5.3. Review of information requests to operating agencies is to their heads, but review of requests to the Public Health Service is to the Assistant H.E.W. Secretary for Health. Therefore, it is claimed that the Assistant Secretary for Health was the reviewing officer for the F.D.A. Counsel for Diapulse, who argued in his reply brief that the Commissioner was the reviewing officer, reiterates this contention in a letter dated May 24.
 
 
 27
 We need not decide this issue. The question before us is whether Diapulse had to exhaust its administrative remedies, not what those remedies were. In the opinion, we pointed out that in the circumstances of this case, exhaustion served a limited purpose and that we would not require exhaustion of all possible administrative remedies when there appeared to be a misunderstanding concerning what remedies were available. This continuing confusion about review procedures within the H.E.W. only reinforces this point. We have reached the merits on a strictly legal question of interpreting a regulation. At this late date it would serve no good purpose to require Diapulse to exhaust administrative remedies. Therefore, while acknowledging that we may have erred on the question of review procedure because we were not properly advised by the F.D.A., we reaffirm our holding that exhaustion is not required here and our decision on the merits, subject, of course, to the dissent of Judge Hays.
 
 HAYS, Circuit Judge (dissenting):
 
 28
 I dissent as to Part III of the opinion of the court.
 
 
 29
 As the majority recognizes, we examine this case against the background of a strong Congressional policy that the providing of services for private citizens by government agencies should be selfsustaining. 31 U.S.C. 483a (1970).
 
 
 30
 To carry out this Congressional policy and to satisfy the requirements of 5 U.S.C. 552(a)(3) (1970) the FDA promulgated 21 C.F.R. 2.115 (1973), which provides that:
 
 
 31
 'special informational services involving more than routine investigation and allocation of staff time are subject to fees as necessary to recover costs to the Government.'
 
 
 32
 The regulation then specifies the fees charged for certain services. The parties and the court agree that none of the fees applies to this case. On its face this regulation would seem to effectuate the Congressional policy and satisfy the statute. But the majority finds the regulation not sufficiently specific. I disagree.
 
 
 33
 First, the regulation creates none of the problems for which legislation is usually attacked as vague. The regulation did not place appellant in jeopardy by failing to inform him as to what conduct is permitted or prohibited. Nor did it deter protected conduct by its overbreadth. Certainly I find no authority for extending the 'void for vagueness' doctrine to a regulation governing search fees.
 
 
 34
 Second, I cannot see how the FDA could have made the regulation specific enough to apprise appellant of what fee he would be charged. The type of personnel necessary to cull disclosable documents from agency files will differ from case to case. In some cases the task may be straightforward and can be performed by unskilled personnel with simple instructions. In others it may involve delicate, complex judgments which only agency officials can exercise.
 
 
 35
 The majority contrasts sections 2.115 with the new 21 C.F.R. 4.20(b)(1), 37 Fed.Reg. 9132 (1972), and apparently implies that the latter meets its standard of specificity and proves that a more specific regulation is possible. With all deference, I think it proves the contrary. The new regulation would not have advised appellant with any greater clarity what it would cost to obtain the files he wanted. He would still have had to inquire of the FDA what the cost would be. Despite the new regulation, the agency's response would have been the same, for it is not denied that the FDA sought to charge appellant only the reasonable costs of conducting the search.
 
 
 36
 I would find that the FDA properly insisted upon reasonable fees pursuant to section 2.115, and on that basis I would affirm.
 
 
 
 [1]
 It might also be contended that judicial review should be barred since Diapulse did not pursue the possibility that the FDA would waive the fees. As noted above, one requirement for waiver was indigency. It seems unlikely that Diapulse would meet the FDA's standard for indigency since it has apparently been able to pay the costs of litigating the instant case. Furthermore, there is no reason why Diapulse should be required to disclose its financial affairs to the FDA for the purpose of gaining a waiver of the fees prior to being allowed to challenge the validity of the fees
 
 
 [2]
 Since we have determined that the fees sought to be charged for deletion of material exempt from disclosure were not authorized, we do not have to pass upon Diapulse's argument that no agency can charge a fee for deletion of such material