James **BASTEK, Russell Kowal, Christopher Pawelski and Michael Pillmeier, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**FEDERAL CROP INSURANCE CORPORATION, and Dan Glickman, solely in his capacity as Secretary of Agriculture, Defendants.**

No. 97 CV 410 (BDP).

United States District Court, S.D. New York.

Aug. 28, 1997.

---

Debra A. Mayer, Gold, Farrell & Marks, New York City, for Plaintiffs.

Irene Chang, Asst. U.S. Atty., New York City, for Defendants.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Plaintiffs bring this action challenging the application of the indemnity provision of the Federal Crop Insurance Act ("the Act"), 7 U.S.C. § 1501 *et seq.* The Federal Crop Insurance Corporation ("FCIC") and Agriculture Secretary Dan Glickman (collectively "the Government") move to dismiss, pursuant to Fed.R.Civ.P. 12(c), on the basis that plaintiffs have failed to exhaust their administrative remedies.

## BACKGROUND

Plaintiffs, who are onion farmers in Orange County, New York, obtained "catastrophic risk protection" from the FCIC as is provided for by the Act. Due to severe weather conditions, plaintiffs lost significant portions (fifty percent or more) of their 1996 crops and sought indemnity for those losses from the FCIC. Plaintiffs were compensated for their crop losses at the coverage level set forth in the Act, which states that "catastrophic risk protection shall offer a producer coverage for a 50 percent loss in yield, on an individual yield or area yield basis, indemnified at 60 percent of the expected market price, or a comparable coverage (as deter-

mined by the Corporation). . . ." 7 U.S.C. § 1508(b)(2)(A)(i)

Plaintiffs assert that the § 1508(b)(2)(A)(i) indemnification calculation was improperly modified by deduction of what they term a "salvage value," which is the value of onions from plaintiffs' 1996 crops which were actually brought to market. The Government rejects the notion that the FCIC improperly injected "salvage value" into the calculation, but, rather, asserts that a deduction for the value of onions actually brought to market is provided for under the "comparable coverage" provision of § 1508(b)(2)(A)(i).

In addition to objecting to the FCIC's use of "salvage value," plaintiffs assert that the FCIC employed an "unrealistically low market value" in calculating indemnity under the Act. The market price used in calculating the money owed plaintiffs was $6.85/cwt for red onions and $4.85/cwt for yellow onions.

On November 1, 1996, plaintiffs' attorney wrote to Secretary Glickman and Kenneth D. Ackerman, Manager of the FCIC and Acting Administrator of the Department of Agriculture's Risk Management Agency ("RMA") challenging generally both the computation of market price and the use of a salvage value. Ackerman responded by a December 11, 1996 letter ("Ackerman letter"), in which he explained RMA's position with respect to these two issues. Then, on December 23, 1996, in response to a claim submitted, Larry N. Atkinson, Director of the RMA, wrote to plaintiff Christopher Pawelski denying his claim and outlining the process for reconsideration and/or appeal. Specifically, Atkinson explained that Pawelski could: (1) seek reconsideration by the Risk Management Agency within thirty days; (2) appeal to the regional director; or (3) request mediation or another form of alternative dispute resolution. By January 22, 1997 letters, Atkinson communicated essentially the same information to plaintiffs Russell Kowal and James Bastek. None of the plaintiffs pursued these options, but instead filed this lawsuit.

## EXHAUSTION

Contending that plaintiffs have failed to exhaust their administrative remedies, the Government moves, pursuant to Fed.R.Civ.P. 12(c), to dismiss for lack of subject matter

jurisdiction. The gravamen of the Government's argument is that it is immune from suit absent consent and that consent under the Act, as modified by the Agriculture Reorganization Act, 7 U.S.C. § 6901 *et seq.*, is premised upon exhaustion. *See Federal Deposit Insurance Corp. v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). The relevant portion of the Reorganization Act provides that "[n]otwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction...." 7 U.S.C. § 6912(e).

Plaintiffs make two arguments in opposition to defendants' motion. First, plaintiffs contend that because "final agency action" has occurred, defendants are subject to suit. Second, they contend that the exhaustion requirement should be waived. Plaintiffs first argument seems somewhat misplaced, as the Government's assertion of immunity is premised not on finality, but rather on the broader principle of exhaustion.

■ When conducting an exhaustion analysis, it is necessary to consider the purposes of exhaustion. *See Pavano v. Shalala,* 95 F.3d 147, 151 (2d Cir.1996). Exhaustion is, of course, the rule, while waiver of exhaustion is the exception. *See Abbey v. Sullivan,* 978 F.2d 37, 44 (2d Cir.1992). However, when one of the purposes is not furthered, exhaustion is normally not required. "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan,* 503 U.S. 140, 145, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992). In order to protect agency authority, it is necessary to

> allow [an] agency to apply its special expertise ... [as well as allow] an agency [ ] to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court. Correlatively, exhaustion principles apply with special force when frequent and deliberate flouting of administrative processes could weaken an agency's effective-

ness by encouraging disregard of its procedures.

*Id.* at 145, 112 S.Ct. at 1086 (citation and quotation marks omitted). Additionally, exhaustion promotes judicial efficiency by allowing for the possibility that a controversy will be mooted by agency review and by "produc[ing] a useful record for subsequent judicial consideration, especially in a complex or technical factual context." *Id.*

■ Recognizing these purposes, the Supreme Court has articulated three general exceptions to exhaustion.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> First, requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action. Such prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> Second, an administrative remedy may be inadequate because of some doubt as to whether the agency was empowered to grant effective relief.

\*      \*      \*      \*      \*      \*

> Third, an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it.

*Id.* at 147–48, 112 S.Ct. at 1088; *see also Howell v. Immigration and Naturalization Serv.,* 72 F.3d 288, 291 (2d Cir.1995).

Plaintiffs contend that exhaustion should be waived in this case because the purposes of exhaustion would not be furthered if it were required. Specifically, they argue that there are no fact issues in dispute, making it unnecessary to have a factual record developed; that "the salvage factor issue involves only statutory interpretation, [that is] [i]t is purely a matter of law, on which no fact finding or agency expertise is necessary;" and that exhaustion would be futile.

Having considered each of plaintiffs' arguments, both as presented in their motion papers and during oral argument, I find them to be without merit. I find that resolution of the matters at issue here could well have been facilitated by the development of a factual record by the Department of Agricul-

 

ture, which has specialized expertise in the area of crop pricing. I note that exhaustion doctrine recognizes the value of this sort of factual development even when, at the end of the administrative proceedings, the case reaches federal court. *See McCarthy*, 503 U.S. at 145, 112 S.Ct. at 1086–87. Similarly, I reject the notion that the issue of "salvage value" is a purely legal issue implicating only statutory interpretation. The use of what plaintiffs term "salvage value" appears to be, in actuality, part of the indemnity calculation outlined in the Act, making factual development on this question clearly helpful to further review, whether administrative or judicial.

In support of their futility argument, plaintiffs rely almost exclusively on the Ackerman letter, which they contend demonstrates the "foregone conclusion" that plaintiffs' claims would not be reevaluated. The Ackerman letter, however, was written in response to general concerns and takes the form of an explanation of the catastrophic risk protection program, rather than a review of these plaintiffs' claims. In addition to the Ackerman letter, plaintiffs Bastek, Kowal, and Pawelski received individual determination letters from Atkinson, who included specific information regarding review and appeal procedures. There is no reason to presume, as do plaintiffs, that these procedures would, in fact, be futile, especially in light of the strong presumption in favor of exhaustion and the deference to agency action it embodies.

Furthermore, plaintiffs overlook one of the main purposes of exhaustion, namely to allow agencies to correct their mistakes internally, without the oversight of the federal courts. *See McCarthy*, 503 U.S. at 145, 112 S.Ct. at 1086–87. If, as plaintiffs contend, the FCIC erred in its calculation of plaintiffs' indemnity under the catastrophic risk protection program, or for other reasons reached incorrect conclusions, the agency is entitled to the opportunity to correct errors that may have occurred. The fact these plaintiffs might no longer be entitled to agency review of their claims does not diminish the importance of allowing agencies to conduct internal review before "being haled into federal court." [1] *See id.*

## CONCLUSION

For the reasons discussed above, defendants' motion to dismiss, pursuant to Fed. R.Civ.P. 12(c), is granted. The Clerk of the Court is directed to dismiss this action. Having dismissed this action, I decline to address the Government's arguments regarding the plaintiff Michael Pillmeier's standing.

SO ORDERED.

---

1. In addition to a number of cases from outside this Circuit, plaintiffs rely on *Diapulse Corp. v. Food and Drug Administration*, 500 F.2d 75, 77–79 (2d Cir.1974). *Diapulse*, however, is clearly distinguishable. In *Diapulse*, the court conducted a functional analysis of exhaustion doctrine and concluded that the primary purposes of exhaustion would not be met in that case. *Id.* The court relied on two significant factors, neither of which is present here. First, the *Diapulse* plaintiffs challenged an FDA policy of charging fees for record searches. The court found that as the

issue presented was "whether the proposed fees were legally authorized, there is no need for the agency to develop a detailed factual record for purposes of decision, nor is there any area for the exercise of discretion. And, on this legal question of authorization, agency expertise is of little help to a reviewing court." *Id.* at 78. Second, the *Diapulse* court concluded that while there was administrative review available, the plaintiffs were not aware of such availability. *Id.* at 78. Here, the plaintiffs were notified of the avenues of review available to them.