**BULL S.A., Appellant**

v.

**Douglas B. COMER, Commissioner of Patents and Trademarks, Appellee.**

**No. 94–5106.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 3, 1995.

Decided June 9, 1995.

Joseph S. Presta, Falls Church, VA, appeared pro hac vice and argued the cause for appellant. Edward J. Kondracki, Falls Church, VA, was on the briefs for appellant.

Albin F. Drost, Deputy Sol., U.S. Patent & Trademark Office, Washington, DC, argued the cause for appellee. With him on the brief were Nancy J. Linck, Sol., and Nancy C. Slutter, Associate Sol., U.S. Patent & Trademark Office, Washington, DC.

Before WALD, WILLIAMS and TATEL, Circuit Judges.

WALD, Circuit Judge:

■ In this case we decide whether the Commissioner of Patents and Trademarks ("Commissioner") is bound by the incorrect renewal deadline information it gave to trademark registration holder Bull S.A. ("Bull") in a signed and sealed Certificate of Renewal. We hold that under settled principles of equitable tolling, the Commissioner is required to waive the applicable statutory deadline for Bull's renewal application in favor of the renewal deadline he previously communicated to Bull.

### I. BACKGROUND

Bull obtained a U.S. Trademark Registration for the mark BULL for various office products on May 15, 1951, and filed a timely application for renewal in 1971. Bull's 1971 renewal application was not granted until May 2, 1972, after various administrative missteps were corrected. At that point, the Commissioner sent Bull a sealed Certificate of Renewal stating that the renewed "registration will remain in force for twenty years from May 15, 1972, unless sooner terminated as provided by law." Certificate of Renewal, *reprinted in* Joint Appendix ("J.A.") at 15a.

Twenty years later in 1992, when Bull applied to renew its registration, it was informed that the 1972 Certificate of Renewal was incorrect. Bull's renewal ran not from 1972 to 1992, but from 1971 to 1991, and Bull had missed the 1991 deadline for another renewal. After unsuccessfully seeking administrative relief, Bull filed suit in district court. The district court granted summary judgment to the Commissioner, holding that the Commissioner had no power to grant the 1972–1992 renewal referenced in the Certificate of Renewal and could not be estopped by his prior certification in 1972 from claiming this lack of authority as a basis for rejecting Bull's appeal.

■ On appeal, Bull argues that the Commissioner did in fact have the authority to issue a 1972–1992 renewal and should therefore be bound by its action in so doing. We find that under the Trademark Act, 15 U.S.C. § 1051 *et seq.* ("Trademark Act" or "Act"), the Commissioner in fact has no authority to issue nonconsecutive renewals, so that the 20–year renewal of the original 1951 trademark must run from 1971 to 1991. We further hold, however, that the Commissioner does have authority to toll the period in which renewal must be sought on equitable grounds and must do so here because Bull justifiably relied on the Commissioner's incorrect directions about the duration of its registration. Assuming Bull meets the standard renewal criteria, its application should be granted effective as of the correct expiration date of the prior renewal, May 15, 1991.

## II. Analysis

### A. *The Statutory Scheme*

Bull first argues that the Commissioner has the authority to grant renewals for nonconsecutive periods, and that we should therefore view the Commissioner's alleged misstatement of the correct renewal period as, in effect, an enforceable exercise of the Commissioner's discretion to issue the renewal for a nonconsecutive 20–year period. We reject this argument, because the Trademark Act does not provide this discretion.

Under the Act "each certificate of registration shall remain in force for [twenty] years," 15 U.S.C. § 1058, and may "be renewed for periods of [twenty] years from the end of the expiring period," 15 U.S.C. § 1059(a).[1] Applications for renewal are accepted up to six months before or three months after "the expiration of the period for which the registration was issued or renewed." *Id.*

Bull argues that the statute thus distinguishes on its face between the "end of the expiring period" and "the expiration of the period for which the registration was issued or renewed." While Bull acknowledges that the deadline for renewal applications is triggered by the end of the 20–year period for which the registration was granted ("the expiration of the period for which the registration was issued or renewed"), it argues that the renewed registration does not run as of this "expiration"; rather it runs as of the time the Commissioner decides to grant it ("the end of the expiring period"). Thus, Bull argues, the "end of the expiring period" is *not* the point at which the previous period expires, instead, it is the point at which the Commissioner makes the renewal decision.

We find no statutory basis for this distinction between "the expiration of the period for which the registration was issued or renewed" and "the end of the expiring period." The Act uses the term "period" to refer to the *registration* period: the "period[ ] of [twenty] years" for which the registration is in force. 15 U.S.C. § 1059(a). It refers to this same "period" in setting the deadline for

renewal applications: within six months before or three months after "the expiration of the period for which the registration was issued or renewed." *Id.* The "end of the expiring period" must logically refer to the end of the same "period"—the period for which the registration was granted—and we can find no reason to read it any differently.

Bull further argues, however, that this reading of the statute fails to give effect to its directive that "[e]ach certificate of registration shall remain in force for twenty years," 15 U.S.C. § 1058, because if the renewal is back-dated to the expiration date at the time it is granted, it is "in force" for less than the full twenty years. If the registration were unenforceable during the pendency of the renewal application, this might be true. The Commissioner informs us, however, that under Patent Office practice the registration is enforceable during the time that the renewal application is pending if the registration is ultimately renewed. Through this practice, the Commissioner apparently grants retroactive effect to the ultimate renewal decision, giving the holder of the registration an enforceable registration for the full twenty years. Although this retroactive effect is not spelled out in the statute, it follows reasonably from the Act's requirements that registrations last for precisely 20 (now ten) years and that they be renewed as of the point of expiration.

Under the statutory scheme, then, the Commissioner must issue and renew trademarks for *consecutive* twenty- (now ten-) year periods. If the Commissioner initially grants a registration in 1951, he can only renew it for the periods running between 1971 and 1991, 1991 and 2001, and so on. The Act envisions a scheme of administrative regularity, in which registration periods run continuously, and the Commissioner does not have the discretion to alter this scheme.

### B. *Equitable Principles*

Next, Bull argues that the Commissioner should be equitably estopped from denying that the registration runs from 1972 to 1992.

---

1. Prior to 1988, the registration and renewal periods ran for twenty years. In 1988, both were reduced to ten. *See* Trademark Law Revision Act of 1988, Pub.L. No. 100–667, 102 Stat. 3935 (1988).

We have cautioned that, "[a]ssuming [estoppel applies against the government], we think it fair to add that, despite the doctrine's flexibility in disputes between private parties, its application to the government must be rigid and sparing." *ATC Petroleum, Inc. v. Sanders,* 860 F.2d 1104, 1111 (D.C.Cir.1988); *see also Office of Personnel Management v. Richmond,* 496 U.S. 414, 419, 110 S.Ct. 2465, 2469, 110 L.Ed.2d 387 (1990) ("From our earliest cases, we have recognized that equitable estoppel will not lie against the Government as it lies against private litigants."). We need not consider whether Bull might be able to estop the Commissioner from denying that he granted a 1972–1992 renewal, however, because, as detailed below, Bull's claim is more appropriately analyzed as a claim for equitable *tolling.* Bull's only claim of reliance is on the Commissioner's representation that the Certificate of Renewal would last until 1992, and that claim can be satisfied through application of classic equitable tolling principles—by requiring the Commissioner to waive the 1991 statutory renewal deadline in favor of the 1992 deadline that he led Bull to believe applied.

■ Unlike classic equitable estoppel, the related principle of equitable tolling implicates no particular sensitivities where the government is a party to the proceedings. To the contrary, equitable *tolling* principles apply against the government on a par with private parties. *See Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990). A plaintiff who pleads and proves "equitable reasons" that excuse his failure to meet a statutory deadline is entitled to tolling of the deadline whether his opponent is a private party or the government; absent any indication of congressional intent to the contrary, equitable tolling is available in suits against the government "in the same way that it is applicable to private suits." *Irwin,* 498 U.S. at 95, 111 S.Ct. at 457.

Turning to the standards for equitable tolling, a wide array of equitable principles can support the tolling of a statutory deadline: "The Supreme Court has suggested ... that courts may properly allow tolling where 'a claimant has received inadequate notice, ... where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, ... where the court has led the plaintiff to believe that she had done everything required of her, ... [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.'" *Mondy v. Secretary of the Army,* 845 F.2d 1051, 1057 (D.C.Cir.1988) (quoting *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1725–26, 80 L.Ed.2d 196 (1984) (per curiam)). In particular, failure to meet a statutory deadline "may be excused if it is the result of justifiable reliance on the advice of [a] government officer." *Jarrell v. United States Postal Service,* 753 F.2d 1088, 1092 (D.C.Cir.1985) (plaintiff in Title VII suit against the government who alleged that he failed to file a timely administrative complaint in reliance on assurances from a government officer that the officer was attempting to resolve the alleged discrimination "clearly pleaded equitable considerations which may excuse noncompliance with the filing requirement"); *cf. Gaw v. Commissioner of Internal Revenue,* 45 F.3d 461, 468 (D.C.Cir.1995) (IRS's failure "to satisfy its equitable obligation to use reasonable diligence to ascertain an address at which [the taxpayer] would receive the deficiency notice" tolls time limit on petition for redetermination).

■ With these principles in mind, we conclude that Bull's claim is correctly analyzed as a claim for equitable tolling rather than classic equitable estoppel and that Bull has met his burden of "pleading and providing ... 'equitable reasons' for noncompliance" with the statutory deadline. *Bayer v. U.S. Dept. of Treasury,* 956 F.2d 330, 333 (D.C.Cir.1992) (quoting *Saltz v. Lehman,* 672 F.2d 207, 209 (D.C.Cir.1982)). We initially conclude that the trademark registration renewal deadline is properly analyzed as a statute of limitations. The registration renewal deadline requires the holder of a trademark registration to file a renewal application within three months after it expires and thus operates as a statute of limitations on renewal actions. *Cf. Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102

S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (statutory requirement of timely charge of discrimination with the EEOC as a prerequisite to suit "like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"). Viewed in this light, Bull's claim does not violate the statutory consecutive-period scheme. By treating Bull's application as if it met the 1991 deadline, the Commissioner can grant a renewal that dates back to the statutory deadline of May 15, 1991, in accordance with the Commissioner's usual practice of making renewals effective as of the date the registration expired regardless of the time at which the renewal is ultimately granted.

We further conclude that Bull has "plead[ed] and prov[ed] ... 'equitable reasons' " more than adequate to trigger equitable tolling of the renewal deadline. Bull's failure to meet the renewal deadline "may be excused if it is the result of justifiable reliance on the advice of [a] government official." *Jarrell*, 753 F.2d at 1092. The facts of this case support Bull's claim of justifiable reliance: Bull received an official government document, published under the signature and Seal of the Commissioner, that *certified* a renewal lasting until May 15, 1992. Once in receipt of this document, and, as detailed below, absent any circumstances that would alert Bull to the error, Bull was entitled to rely on its validity.

The Commissioner argues nevertheless that Bull did not and could not justifiably rely on the registration period identified in the Commissioner's sealed Certificate of Renewal because (1) Bull is charged with knowledge of the governing law—namely that the renewal *had* to run for a consecutive 20–year period under the statute, (2) Bull had notice of the earlier expiration from the Certificate of Renewal's statement that the registration might expire at some point other than 1992 by "operation of law," (3) Bull had notice of an error from a facial discrepancy in the Certificate of Renewal, and (4) Bull indicated awareness of the actual expiration date in its renewal application. We disagree that Bull had actual or constructive notice that the registration expired in 1991 sufficient to defeat his claim of justifiable reliance; we respond to each of the Commissioner's claims in turn.

*First,* we have stated that "there is no grave injustice in holding parties to a reasonable knowledge of the law," *ATC Petroleum,* 860 F.2d at 1112, and have concluded in this case that the Commissioner does not have discretion to renew a trademark registration for a nonconsecutive period. This understanding of the limits on the Commissioner's authority, however, emerges only from fairly involved statutory analysis. We do not think it "reasonable" to hold Bull to knowledge of a byzantine statutory scheme in the face of an official written notification from the agency's highest authority of a specified date certain for the beginning of the 20–year period. *Second,* the Commissioner's statement in the Certificate of Renewal that the renewal would last for twenty years *"unless otherwise terminated by law,"* did not put Bull on notice that the renewal might expire earlier than 1992. The "unless otherwise terminated by law" provision put Bull on notice that some other law—independent of the normal expiration—might terminate the trademark. It did not give notice that the expiration itself might occur on a different date and certainly did not put Bull on notice to apply for renewal earlier than 1992. *Third,* the Commissioner argues that Bull should have questioned the accuracy of the Certificate of Renewal's statement that it would "remain in force for twenty years from May 15, 1972," in light of the fact that the Certificate was *dated* May 2, 1972, thirteen days prior to its purported date of effectiveness. Although a more dramatic disparity in the dates on the certificate might suffice to put Bull on notice of an error, this one is too minor and too easily understood as an ordinary administrative pre-effective date notice to place on Bull the duty to second-guess the Commissioner's date certain. *Finally,* the Commissioner points to Bull's own 1992 application for renewal, in which Bull states that it is seeking renewal for the trademark "granted ... on May 15, 1951, and renewed ... on May 15, 1971," to argue that Bull *knew* that the renewal was in fact a 1971–1991 renewal. Application for Renewal of Trademark Registration No. 542,266 (April 22, 1992), *reprinted in* J.A. at 16a. In response, Bull offers proof

of actual reliance on the 1972 date in the Certificate in a letter it wrote to its lawyer in the United States in January, 1992, stating that "renewal of our above-mentioned trademark is due before next May 15, [19]92." Letter from Marie–Noelle Vidal to Mr. Kondracki (Jan. 28, 1992), *reprinted in* J.A. at 64a. In the face of Bull's clear reliance on the deadline indicated in the Certificate of Renewal—as of January, 1992, when the 1991 deadline had already passed, and again in its action of applying at the point in 1992 that would have been timely if the Certificate of Renewal were correct—its misstatement in the renewal request is too isolated to carry the day for the Commissioner. To the contrary, Bull has shown reliance that was both actual and justified.

In sum, our assessment of the equities of this case convinces us that it is entirely appropriate to insist that the Commissioner toll the statutory deadline so as to render Bull's 1992 application timely. In this regard, however, we note that Bull's ability to renew its registration after the statutory deadline has the potential to involve the rights of third parties, and we do not attempt to decide here the fate of those unknown rights. In the usual equitable tolling case, the opposing party—in this case the Commissioner—bears the brunt of any tolling. In this case, however, that burden could in the future implicate

third parties as well. If, for instance, a third party were to check the trademark registry some time between 1991 and the Commissioner's final action in this case, that party would be informed that Bull's trademark registration expired as of 1991.[2] If that party were then in good faith to launch its own business with the BULL trademark, it is not clear whether the equities would necessarily favor the full statutory enforcement of Bull's trademark against that third party. As the Commissioner has not identified any such third parties, however, we do not now resolve that issue.[3] In sum, on the case before us, which requires us to decide only the rights of Bull vis-a-vis the Commissioner, we conclude that the equities favor tolling.

### III. Conclusion

For the foregoing reasons, we reverse the district court's opinion and remand for proceedings consistent with our opinion.

*So ordered.*

---

**2.** Although the Certificate of Renewal and Bull's official file jacket both state that the registration was renewed May 15, 1972, and both are available to the public, the main trademark registry states that Bull's trademark was registered on May 15, 1951, and renewed "from May 15, 1971." Principal Register, Registration No. 542,266 BULL, *reprinted in* J.A. at 66a.

**3.** Indeed, although the Commissioner refers generally to the public's interest in the reliability of

the trademark register, he does so only to emphasize the general threat of "administrative chaos." Commissioner's Brief at 24. As to that, we assume that Certificate of Renewal errors are exceptional enough to render this interference with the system *de minimis*.