# Statute of Limitations and Settlement of Equal Credit Opportunity Act Discrimination Claims Against the Department of Agriculture

The Attorney General may not waive the statute of limitations in the litigation or compromise of pending claims against the United States.

Absent a specific provision to the contrary, a statute of limitations on civil actions also should apply to administrative settlements of claims arising under that statute pursuant to 31 U.S.C. § 3702.

31 U S.C. § 3702 does not authorize the Department of Agriculture to pay compensatory damages in an administrative settlement of an ECOA claim if ECOA's two year statute of limitations has run.

Filing an administrative claim with USDA does not toll ECOA's statute of limitations.

Although ECOA's statute of limitations is, in appropriate circumstances, subject to the doctrines of equitable tolling and equitable estoppel, courts have rarely applied either doctrine against the United States.

January 29, 1998

MEMORANDUM OPINION FOR THE ASSOCIATE ATTORNEY GENERAL

This memorandum responds to your request for advice on whether the statute of limitations in the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691–1691f (1994 & Supp. I 1995) ("ECOA"), applies to administrative settlements of ECOA claims. You also have asked us whether the government may waive the statute of limitations, and under what circumstances the statute of limitations might be tolled.

We have concluded that ECOA's statute of limitations does apply to administrative settlements of ECOA claims and that the statute of limitations cannot be waived by the United States, either in litigation or in the administrative process. As for tolling of the statute of limitations, we have concluded that filing an administrative complaint does not toll the limitations period for a civil action. While ECOA is, in relevant circumstances, subject to the doctrines of equitable tolling and equitable estoppel, courts infrequently apply these doctrines against the United States.

## I. Background

In relevant part, ECOA prohibits any creditor from discriminating against any applicant, with respect to any aspect of a credit transaction, on the basis of race, color, religion, national origin, sex or marital status. 15 U.S.C. § 1691(a). A "creditor" under the act includes any person who regularly extends, renews, or continues credit. *Id.* § 1691a(e). A "person" is "a natural person, a corporation,

11

government or governmental subdivision or agency, trust, estate, partnership, cooperative, or association." *Id.* § 1691a(f).

Administrative enforcement of ECOA is divided among several federal agencies, each of which has authority over certain categories of creditors. *Id.* § 1691c(a). Enforcement responsibility not specifically committed to another federal agency is vested in the Federal Trade Commission ("FTC"), which is to use its powers under the Federal Trade Commission Act, 15 U.S.C.A. §§ 41–58 (West 1997), to enforce ECOA's requirements. 15 U.S.C. § 1691c(c). The Department of Agriculture's ("USDA's") farm credit programs fall under the authority of the FTC. The FTC has authorized USDA to process ECOA claims arising from USDA programs.[1]

Section 1691e of ECOA also provides for a private right of action against creditors who violate the discrimination prohibitions of the act. Under subsection (a), all creditors are liable for compensatory damages: "[a]ny creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant acting either in an individual capacity or as a member of a class." *Id.* § 1691e(a). Subsection (d) authorizes the imposition of attorney's fees and costs in a successful action. *Id.* § 1691e(d). No private action may be brought later than two years after the occurrence of the violation, unless the Attorney General or the agency with administrative enforcement responsibility commences an enforcement proceeding within two years. In that case, an applicant may bring a civil action within one year of the commencement of the enforcement proceeding. *Id.* § 1691e(f).

In a 1994 opinion, this Office opined that ECOA applies to federal agencies and that it waives the sovereign immunity of the United States for monetary relief. Accordingly, we advised USDA that the Secretary could provide monetary relief, attorney's fees, and costs in administrative settlements of ECOA discrimination claims if a court could award such relief in an action by an aggrieved person. *Authority of USDA to Award Monetary Relief for Discrimination*, 18 Op. O.L.C. 52 (1994) ("USDA Opinion"). USDA accepts and processes ECOA complaints pursuant to its process for investigating any discrimination complaint in its programs, which is set forth at 7 C.F.R. § 15.52 (1997). Those regulations permit any person to file a written complaint regarding discrimination in any program or facility directly administered by USDA. *Id.*

In October of 1998, fourteen plaintiffs filed a class action suit against USDA alleging that USDA had discriminated against them, and other similarly situated individuals, on the basis of their race in the administration of farm loans and credit programs during the period of January 1983 to January 1997. *Pigford v. Glickman*, 182 F.R.D. 341 (D.D.C. 1998). The court granted a stay of that action to allow the plaintiffs and the United States to explore options for settling the

---

[1] Letter for Robert Franco, Associate Director, Office of Advocacy and Enterprise, U.S. Department of Agriculture, from David Medine, Associate Director for Credit Practices, Federal Trade Commission (Nov. 3, 1992) ("FTC Letter")

claims of the named plaintiffs and the putative class members. As part of the Department's consideration of settlement options, the Office of the Associate Attorney General asked this Office for oral advice on the application of ECOA's statute of limitations to claims in litigation and to claims in USDA's administrative settlement process. Subsequently, you asked for a formal opinion on the following questions: 1) can the United States waive the statute of limitations in an ECOA civil action; 2) does ECOA's statute of limitations apply to the administrative settlement of ECOA claims by USDA; 3) does the filing of an administrative complaint with USDA toll the statute of limitations; and 4) would the doctrines of equitable tolling or equitable estoppel apply to these cases?

Our analysis proceeds as follows. In Part II, we conclude that the Attorney General may not waive the statute of limitations in the litigation or compromise of these claims. In Part III, we conclude that because USDA may make administrative settlements of ECOA claims that include compensatory damages only where a court could award such relief, USDA may not waive the statute of limitations in administrative settlements. Part III also concludes that section 3702 of title 31 does not provide an independent basis of authority for the payment of administrative claims filed after expiration of the ECOA statute of limitations. Moreover, even where an administrative claim is filed within the ECOA statute of limitations, USDA may not make payment on the claim without relevant appropriations authority. We understand that USDA's appropriation authority, however, would provide no basis for paying compensatory damages under ECOA where the statute of limitations has expired and no timely claim was asserted in court. Part IV examines the circumstances in which ECOA's statute of limitations might be tolled. That part concludes that filing an administrative claim does not toll the statute of limitations on a civil action. It then concludes that although the doctrines of equitable tolling and equitable estoppel would apply to ECOA in appropriate circumstances, courts infrequently apply these doctrines against the United States.

## II. Waiver in Litigation

Ordinarily, a civil action for compensatory damages under ECOA must be filed no later than two years from the date of occurrence of the violation. 15 U.S.C. § 1691e(f). However, when any agency responsible for administrative enforcement under § 1691c of ECOA commences an enforcement proceeding within two years from the date of the occurrence of the violation, or when the Attorney General commences a civil action under this section within two years from the date of the occurrence of the violation, "any applicant who has been a victim of the discrimination which is the subject of such proceeding or civil action may bring

an action under this section not later than one year after the commencement of that proceeding or action." 15 U.S.C. § 1691e(f).[2]

The federal courts and this Office have observed that the statute of limitations for a cause of action against the United States constitutes a term of consent to the waiver of sovereign immunity. *See* Memorandum for James W. Moorman, Assistant Attorney General, Land & Natural Resources Division, from John M. Harmon, Assistant Attorney General, Office of Legal Counsel, *Re: Pueblo of Taos v. Andrus* at 2 n.1 (Mar. 30, 1979) (citing cases). The doctrine of sovereign immunity precludes suit against the United States without the consent of Congress, and the terms of its consent define the extent of a court's jurisdiction. *See United States v. Mottaz,* 476 U.S. 834, 841 (1986). In particular, " '[w]hen waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity.' " *Id.* (quoting *Block v. North Dakota,* 461 U.S. 273, 287 (1983)). Because the terms of consent are established by Congress, *see id.,* modifying the terms of consent requires legislative action. *See, e.g., United States v. Garbutt Oil Co.,* 302 U.S. 528, 534–35 (1938) (discussing *Tucker v. Alexander,* 275 U.S. 228 (1927) ("no officer of the government has power to waive the statute of limitations")); *Overhauser v. United States,* 45 F.3d 1085, 1088 (7th Cir. 1995) (government officers have no general power to waive statutes of limitations in tax cases and are limited to specific statutory authorizations for such waivers). Thus the Attorney General cannot waive the statute of limitations in the litigation or in the compromise of these pending claims.[3]

---

[2] For simplicity, this opinion will refer to ECOA's limitation period as a two-year restriction

[3] In *Irwin v. Department of Veterans Affairs,* 498 U.S. 89 (1990), the Supreme Court ruled that a statute of limitations in suits against the federal government is presumptively subject to equitable tolling Some have suggested that the Court's decision to allow equitable tolling implies that it is now possible for the government itself to waive a legislatively imposed statute of limitations. There may be cases where, in the context of a specific statutory scheme, the courts would have the authority to hold that the government had waived the applicable statute of limitations, such as by failing to assert the defense in a responsive pleading. *See Johnson v. Sullivan,* 922 F.2d 346 (7th Cir. 1990) (en banc) (statutory requirement that plaintiff seek judicial review of denial of benefits within 60 days of receiving a final agency determination, or within such further time as the Secretary may allow, waived if not raised in a responsive pleading as an affirmative defense). The general rule, however, still remains that the limitations period is a condition of the waiver of sovereign immunity. *See Irwin,* 498 U.S. at 94; *Henderson v United States,* 517 U.S. 654, 678 n.3 (1996) (Thomas, J., dissenting) ("*Irwin* did mark a departure from our earlier, and stricter, treatment of statutes of limitations in the sovereign immunity context, but our decision in *United States v. Williams,* 514 U.S. 527 (1995), makes clear that statutes of limitations in suits brought against the United States are no less jurisdictional prerequisites than they were before *Irwin.*") (citations omitted); *see also Lawyers Title Ins. Co v Dearborn Title Corp.,* 118 F.3d 1157, 1166 (7th Cir. 1997) (unlike statutes of limitations in actions between private parties, limitations in suits against the United States are jurisdictional and not subject to waiver).

As a general matter, it seems clear that *Irwin* held that the doctrine of equitable tolling was implicitly included within the waiver of sovereign immunity granted by Congress as part of the statute. *Irwin,* 498 U.S. at 95–96 *Irwin* did not alter the well-established precedent that statutes of limitations reflect a condition on Congress's waiver of sovereign immunity. *See id.* at 94. The Court has repeatedly affirmed that principle. *See, e g., United States v. Williams,* 514 U.S. 527, 534 (1995); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 769 (4th Cir. 1991), *cert. denied,* 503 U.S. 984 (1992); *Dillard v. Runyon,* 928 F. Supp. 1316, 1324 (S.D.N.Y. 1996), *aff'd,* 108 F 3d 1369 (2d Cir. 1997); *cf. Calhoun County v. United States,* 132 F.3d 1100 (5th Cir. 1998) (*Irwin* reinterpreted the intent behind congressional waivers of sovereign immunity, but did not necessarily alter the nature of the conditions on that waiver). Indeed, the Court reaffirmed this principle just months before issuing its decision in *Irwin, see United States v. Dalm,* 494 U.S. 596, 608 (1990), and *Irwin* nowhere rejects *Dalm* or the cases cited therein. We therefore do not read *Irwin* to imply that the statute of limitations in a suit against the United States is waivable, either as an affirmative defense or at the discretion of an executive officer. *See Bath*

## III. Administrative Settlements

### A. *Authority for Administrative Settlements*

ECOA does not expressly address the administrative settlement of ECOA claims against federal agency creditors. This Office has previously opined that the Secretary of Agriculture may award monetary relief, attorney's fees, and costs in administrative settlements of ECOA discrimination claims if a court could award such relief in an action by an aggrieved person. USDA Opinion at 2. That opinion considered the applicability of 31 U.S.C. § 1301(a) (1994), which states that federal agencies may spend funds only on the objects for which they were appropriated. USDA Opinion at 2. "Consistent with this requirement, appropriations law provides that agencies have authority to provide for monetary relief in a voluntary settlement of a discrimination claim only if the agency would be subject to such relief in a court action regarding such discrimination brought by the aggrieved person." *Id.* (footnote omitted). The Comptroller General has applied the same principle in evaluating agency authority to settle claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1994 & Supp. I 1995), and the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. §§ 621–634 (West 1985 & Supp. III 1997). The Comptroller General ruled that an agency may provide back pay or attorney's fees only where such monetary relief would be available in a court proceeding on the claim. *See* USDA Opinion at 2 (discussing 62 Comp. Gen. 239 (1983); 64 Comp. Gen. 349 (1985)). Because ECOA waives sovereign immunity with respect to compensatory damages, *id.* at 17–19, agencies may provide compensatory damages in their voluntary settlement of discrimination claims if the conduct complained of violates ECOA. *See id.* at 20.

The Credit Practices Bureau of the FTC also has advised USDA that it may investigate and provide appropriate remedies for ECOA claims filed against USDA. The FTC authorized USDA to investigate ECOA complaints regarding USDA lending programs in a letter of understanding, *see* FTC Letter, and told us that it orally advised USDA that USDA may provide appropriate remedies for valid claims prior to litigation.

### B. *Waiver of Statute of Limitations*

The same prohibition that applies to waiving the statute of limitations in litigation would apply to waiving the statute in any pre-litigation, administrative settlement of an ECOA claim at USDA. As our 1994 opinion explained, USDA's authority to use existing appropriations to pay administrative ECOA claims

---

*Iron Works Corp v United States,* 20 F 3d 1567, 1572 n 2 (Fed Cir 1994) ("Tolling is not the same as waiving Presumably, therefore, *Irwin* merely holds that those time limits, while jurisdictional, can be equitably tolled in certain circumstances ")

depends upon the existence of a viable civil action that could be brought by the aggrieved claimant. *See* USDA Opinion at 1–2. A court can award damages against the United States only where there has been a waiver of sovereign immunity. ECOA's waiver of sovereign immunity is valid only where a claim is filed before the expiration of the limitations period. Thus, if the statute of limitations has expired, a court cannot award damages on that claim, and the agency cannot rely on the existence of a viable ECOA claim as a basis for expending appropriated funds to pay compensatory damages as part of an administrative settlement.

## C. *Applicability of 31 U.S.C. § 3702*

You have asked us to consider how the provisions of 31 U.S.C. § 3702, which governs the settlement of claims against the United States, apply to the settlement of ECOA claims. Prior to 1996, § 3702 authorized the General Accounting Office ("GAO") to settle all claims against the United States "except as provided in . . . another law." 31 U.S.C. § 3702 (1994 & Supp. III 1997).[4] A 1996 amendment to § 3702 transferred the settlement authority to various executive agencies, including the Office of Personnel Management, the Secretary of Defense, and the Office of Management and Budget. *See* 31 U.S.C.A. § 3702(a) (West 1983 & Supp. III 1997).

The term "settle" in § 3702 does not mean "compromise," but rather refers to an administrative determination of the amount of money (if any) due a claimant. *See* 3 Principles of Federal Appropriations Law 12–9 (2d ed. 1992) (citing *Illinois Surety Co. v. United States ex rel. Peeler*, 240 U.S. 214, 219–21 (1916)); *State v. Bowsher*, 734 F. Supp. 525, 530 n.4 (D.D.C. 1990). Claims presented for settlement under § 3702 must be received within six years from the date on which the claim arose, "except as provided in this chapter or another law." 31 U.S.C. § 3702(b)(1)(A).

You have asked us to consider in particular whether § 3702(b) would allow USDA to include compensatory damages in settlements of ECOA claims filed within six years of the accrual of the claim, even if ECOA's statute of limitations had run and a court could no longer award such damages. We have concluded, first, that § 3702 would apply only to those ECOA claims filed with USDA within the two-year statute of limitations in ECOA. Second, we have concluded that § 3702 provides no authority to pay a claim if funds have not otherwise been appropriated. USDA has informed us that it does not have appropriations authority to pay compensatory damages other than the authority that exists when a court could award such damages in a civil action. Thus, even if the appropriate statute

---

[4] As previously noted, ECOA vests the FTC with administrative enforcement responsibility not specifically committed to another federal agency, *see* 15 U.S.C § 1691c(c), but does not expressly address the administrative settlement of ECOA claims against federal agency creditors. For the purposes of this opinion, we assume without deciding that neither ECOA nor the Federal Trade Commission Act provides for the settlement of claims against federal agency creditors within the meaning of § 3702(a), and that the provisions of § 3702 would apply to administrative settlements of these claims.

of limitations for an administrative claim under § 3702 were six years instead of two years, USDA could not pay compensatory damages as part of an administrative settlement if the two-year statute of limitations had run.

## 1. *Length of Limitations Period*

We start with the determination of the appropriate time limitation for ECOA claims. While the GAO has not issued any opinions regarding the settlement of ECOA claims, it has considered the interaction of § 3702(b) and other limitations periods on civil causes of action.[5] For many years, GAO's position was that statutes setting limitations on "causes of action" or "civil actions" applied only to judicial proceedings, and therefore claims filed with an agency rather than a court were subject to the six-year limitation of § 3702(b). *See, e.g.*, 51 Comp. Gen. 20, 22 (1971) (GAO will settle claims for communications services filed within six years notwithstanding shorter limitation on "actions at law" in the Interstate Commerce Act and the Communications Act); 57 Comp. Gen. 441, 443 (1978) (claims for overtime compensation may be filed up to six years after the claim first accrued notwithstanding the two or three-year limitation period in the Fair Labor Standards Act).

In a 1994 decision, GAO reconsidered and reversed this position. 73 Comp. Gen. 157 (1994). The relevant decision arose under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (1994) ("FLSA"). A claim for unpaid minimum wages, unpaid overtime compensation and liquidated damages under FLSA must be filed within two years of the time it first accrues, or three years if it arises out of a willful violation. 29 U.S.C. § 255 (1994). The claimant sought overtime compensation for the six-year period that preceded his claim. The Air Force, the claimant's employer, and the Office of Personnel Management ("OPM") argued that FLSA's two or three-year limitations period, rather than the six-year period in § 3702(b), should govern the claim. 73 Comp. Gen. at 160. In ruling against the claimant, GAO cited cases holding that when a statute creates a right that did not exist at common law and limits the time to enforce it, the lapse of time not only bars the remedy but extinguishes the underlying rights and liabilities of the parties. *See William Danzer Co. v. Gulf R.R.*, 268 U.S. 633, 635–36 (1925); *Kalmich v. Bruno*, 553 F.2d 549, 553 (7th Cir.), *cert. denied*, 434 U.S. 940 (1977) (cited in 73 Comp. Gen. at 161).[6] "Accordingly, a time limitation imposed on a statutorily created judicial cause of action will apply to administrative proceedings to adjudicate the same claims absent a specific provision to the con-

---

[5] Although the opinions and legal interpretation of the GAO and the Comptroller General often provide helpful guidance on appropriations matters and related issues, they are not binding upon departments, agencies, or officers of the executive branch *See Bowsher v. Synar*, 478 U.S 714, 727–32 (1986).

[6] OPM, which now has the authority to settle claims involving leave and compensation of federal civilian employees under § 3702(a)(2), informed us that it has continued to apply the FLSA statute of limitations to FLSA claims filed against federal agencies.

17

trary." 73 Comp. Gen. at 161. Because FLSA contained no provision indicating that a different limitations period should apply to administrative claims, GAO determined that the two or three-year statute of limitations in FLSA applies to the administrative settlement of FLSA claims under § 3702. *Id.*

We need not resolve here whether GAO's reversal of its long-standing position was warranted because we believe that, in light of subsequent congressional action, GAO's 1994 interpretation should now govern.[7] Following the GAO decision announcing that it would apply the two or three-year limitations period to FLSA claims, Congress enacted a grandfather provision to except those FLSA claimants who might have relied on the earlier GAO interpretation, but Congress did not amend the statute to alter the prospective application of the two or three-year limitations period. Under section 640 of the 1995 Treasury, Postal Service and General Government Appropriations Act, Congress directed GAO to apply a six-year statute of limitations to all FLSA claims filed before June 30, 1994; significantly, it did not alter the effect of the GAO decision as to claims filed after that date. *See* Pub. L. No. 103–329, § 640, 108 Stat. 2382, 2432 (1994).

In addition, Congress revisited the settlement of claims under § 3702 on three other occasions. In 1995, it amended section 640 by excluding from its coverage claims in which an employee received any compensation for overtime hours worked during the period covered by the claim, or claims for compensation for time spent commuting between an employee's residence and duty station. Treasury, Postal Service, and General Government Appropriations Act, 1996, Pub. L. No. 104–52, 109 Stat. 468, 468–69 (1995). Congress also transferred GAO's functions under several statutes, including § 3702, to the Office of Management and Budget, contingent upon the transfer of such personnel, budget authority, records and property as deemed necessary. *See* Legislative Branch Appropriations Act, 1996, Pub. L. No. 104–53, § 211, 109 Stat. 514, 535 (1995). Finally, in 1996, Congress amended the text of § 3702 itself, transferring the responsibility for settling claims to various executive branch agencies, including the Department of Defense and OPM. General Accounting Office Act of 1996, Pub. L. No. 104–316, § 202(n), 110 Stat. 3826, 3843–44. In none of these amendments did Congress alter the GAO's interpretation of the statute of limitations provision for FLSA claims filed after June 30, 1994.

Thus, in interpreting § 3702, we must consider that Congress has made specific adjustments to the statutory scheme in light of the GAO interpretation and left the agency's interpretation undisturbed. *See generally CFTC v. Schor*, 478 U.S. 833, 846 (1986). The legislative record is not limited to instances in which Congress revisited the statute and abstained from overturning the administrative construction. Although such action provides relevant, albeit uncertain, evidence

---

[7] We note that one district court has held that the two or three-year limitation in FLSA applies to both administrative and judicial claims The court further stated that while it was aware that GAO had applied a six-year limitation to FLSA claims for many years, "GAO was wrong to do so" and had no such authority. *Adams v Bowsher*, 946 F. Supp 37, 42 (D.D.C. 1996).

of legislative intent, *see generally United States v. Wells*, 519 U.S. 482, 494 (1997) (finding legislative silence inconclusive because Congress has not spoken directly to the interpretive issue in question), here, ·Congress has done more than merely "kept its silence." *Schor*, 478 U.S. at 846. Rather, Congress has spoken directly to the interpretive issue in question by enacting legislation specifically related and responsive to the GAO interpretation. *See id.; Bell v. New Jersey*, 461 U.S. 773, 785 n.12 (1983); *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 381–82 (1969); *Zemel v. Rusk*, 381 U.S. 1, 11 (1965); *cf. Wells*, 519 U.S. at 494. While at one time, § 3702 may have been reasonably subject to conflicting interpretations, the statute cannot be divorced from the subsequent—and directly relevant—congressional action, which now forms a strong basis of support for the GAO interpretation.[8] Accordingly, absent a specific provision to the contrary, ECOA's limitation on civil actions also should apply to administrative settlements of ECOA claims.

As noted earlier, ECOA does not expressly address administrative claims against federal agency creditors, and its limitation provision does not specifically except administrative claims. Section 1691e establishes civil liability for any actual damages sustained by an applicant. 15 U.S.C. § 1691e(a). That section then provides that "[a]ny action under [§ 1691e] may be brought in the appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction." *Id.* § 1691e(f).

The language of ECOA's limitation provision is not as broad as that of the limitations provision in FLSA. The heading of § 1691e(f) is "Jurisdiction of courts; time for maintenance of action; exceptions," and the first sentence of sub-section (f) authorizes bringing actions in an appropriate court. *Id.* The word "court" does not appear in FLSA's limitation provision. *See* 29 U.S.C. § 255 ("Any action commenced on or after May 14, 1947, to enforce any cause of action . . . if the cause of action accrues on or after May 14, 1947[,] may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued . . . .").

Based on these differences in text, the argument that § 1691e(f) of ECOA should be limited to judicial causes of action is stronger than that regarding § 255 of FLSA. There is nothing in ECOA's legislative history, however, to suggest that Congress intended to grant applicants with claims against federal agency creditors a different and longer limitations period than that available to applicants of private creditors. Moreover, ECOA's limitation provision is included in the same section as the provision that establishes the right to compensatory damages, and the limita-

---

[8] A 1951 opinion of the Attorney General concluded that a statute of limitations for suits brought against the Commodity Credit Corporation did not bar administrative payment of claims filed with the agency after the expiration of that limitations period. *Commodity Credit Corporation, Payment of Claims Barred by Statute of Limitations*, 41 Op Att'y Gen. 80 (1951) The 1951 opinion predates GAO's announcement of its revised interpretation of § 3702, and, more importantly, Congress's response to that revised interpretation The 1951 opinion therefore does not constitute precedent that counsels a different result in this matter

tion provision does not specifically except administrative claims from its provisions. *See* 15 U.S.C. § 1691e(a), (f). Accordingly, we conclude that ECOA's statute of limitations also applies to administrative settlements of ECOA claims.

## 2. *Appropriations Authorized to Pay Damages*

We next examine whether § 3702 provides an independent basis of authority to expend appropriations to pay claims in the absence of an ECOA claim that could be filed in court, so long as the claims are filed with the relevant agency within the appropriate statutory time period. Although § 3702 provides an independent administrative claims handling procedure, the statute does not provide an independent basis of authority for paying such claims. Rather, in order for payment of the claim to be lawful, there must be independent appropriations authority to pay the claim. Under § 3702(d), claims that may merit relief, but that cannot be "adjusted . . . using an existing appropriation," are to be referred to Congress for possible legislative action. 31 U.S.C. § 3702(d). A claim that is adjusted under § 3702 "using an existing appropriation" must be paid from either a pre-existing appropriations account for the year in which the claim accrued or, if such an account is not available, an account for the current year for the same object and purpose. *See id.* § 3702(d); 31 U.S.C. §§ 1552, 1553 (1994).[9] Thus, it is evident from the text of § 3702 that it provides no basis for paying any claims for which there is no independent appropriations authority, which would include ECOA claims involving compensatory damages or other relief that is not authorized by USDA's other operating and program authority.

OPM has informed us that it deems claims under FLSA to be timely if they are filed with OPM or the relevant agency within the statute of limitations, regardless of when or whether such claim is filed with a court. If this practice properly applied to ECOA claims, USDA could settle and pay any claims that were filed with USDA within the applicable two-year statute of limitations. However, OPM has informed us that the claims that it settles under § 3702 are claims for which there is an existing appropriation, such as claims relating to back pay, living expenses, overtime or holiday pay, or cost of living adjustments. While § 3702 provides the authority for OPM or an agency to examine and settle those claims, the authority to pay out funds to claimants arises from the underlying appropriation for overtime or living expenses. If benefits are due, OPM has explained to us, it directs the relevant agency to pay the claimant the administrative benefits to which he or she would have been entitled. There is no award of compensatory

---

[9] Under § 1552 of title 31, agencies are required to keep accounts open on fixed appropriations for five years In settling a claim under § 3702 that accrued within five years, OPM explained that it would direct the relevant agency to pay the claim from the money remaining in its account for the relevant appropriation for the relevant year. If no funds remained in the account, or the claim accrued more than five years earlier (and the appropriations account has been closed), 31 U.S.C. § 1553 provides that any obligation that would have been properly charged to the closed appropriation account "may be charged to any current appropriation account of the agency available for the same purpose " *Id.* § 1553(b)(1).

damages. The authority to pay compensatory damages for an ECOA claim, in contrast, derives from the waiver of sovereign immunity in ECOA and is dependent upon the fact that a court could award such damages in a civil action. *See* USDA Opinion at 2, 20.

Accordingly, § 3702 does not provide an independent basis for USDA to pay compensatory damages for an ECOA claim. The requirement that claims settled pursuant to § 3702 be charged to the specific appropriation for the year in which the claim arose or to a current appropriation for the same purpose is in accord with our earlier conclusion that compensatory damages may only be paid out ''if the agency would be subject to such relief in a court action.'' USDA Opinion at 2.

## IV. Tolling of the Statute of Limitations

We next consider in what circumstances ECOA's statute of limitations might be tolled. First, we address whether filing an administrative claim tolls the statute of limitations. Second, we consider whether the statute of limitations is subject to equitable tolling. Finally, we consider whether a court might hold the United States estopped from raising the statute of limitations as a defense to all or a portion of a claim.

### A. *Filing an Administrative Complaint*

As a general matter, courts do not toll a statute of limitations simply because the plaintiff is pursuing an alternative means of obtaining relief that is not a condition precedent to bringing suit under the relevant statute. *See Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980) (Title VII's statute of limitations not tolled during employer's consideration of grievance); *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 236–37 (1976) (no tolling of period for filing EEOC claim during grievance-arbitration proceedings; collective bargaining rights are independent of those conferred by Title VII); *Johnson v. Railway Express Agency*, 421 U.S. 454 (1975) (statute of limitations for claims brought under 42 U.S.C. § 1981 not tolled during processing of complaint under Title VII; § 1981 offers independent avenue of relief). While pursuit of mandatory administrative remedies can delay the start or running of a statute of limitations, pursuit of remedies that are merely permissive does not toll a limitations period. *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 56–57, 60–61 (D.C. Cir. 1987); *Conley v. International Brotherhood of Electrical Workers, Local 639*, 810 F.2d 913 (9th Cir. 1987) (filing of unfair labor practice charge with National Labor Relations Board does not toll limitations period applicable to lawsuit against union based on the charge; NLRB action was merely optional, though parallel, avenue of relief). An administrative procedure is ''permissive'' if its pursuit is not a pre-

21

condition to pursuit of a lawsuit. *Spannaus*, 824 F.2d at 58. Accordingly, if filing an ECOA complaint with USDA is a voluntary, permissive administrative remedy, filing an administrative claim would not toll the ECOA limitations period applicable to this lawsuit.

It appears that USDA's administrative process is a parallel, voluntary procedure. ECOA does not require an aggrieved applicant to file an administrative complaint against a government creditor before filing suit in court. Nor has the FTC, which has administrative enforcement responsibility for claims against the USDA, indicated in its regulations that exhaustion of an administrative process is required.

USDA has suggested that 7 U.S.C. § 6912(e) (1994) may require an ECOA claimant to exhaust administrative procedures before filing suit against the Secretary or the Department of Agriculture, and, accordingly, that the statute of limitations should be tolled pending resolution of the administrative process. Enacted in 1994, § 6912(e) states:

> Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against—
>
> (1) the Secretary;
> (2) the Department; or
> (3) an agency, office, officer, or employee of the Department.

*Id.*[10] USDA has promulgated regulations prohibiting discrimination in the administration of USDA programs and facilities. 7 C.F.R. pt. 15, subpt. B (1997). Under § 15.52(b) of those regulations, a person "may" file a written complaint of discrimination with the Office of Advocacy and Enterprise. 7 C.F.R. § 15.52(b). The complaint procedure in § 15.52 is not required by law, but it was established by the Secretary. Thus USDA has suggested that § 6912(e) requires that an ECOA claimant exhaust the administrative procedure in § 15.52 before bringing a civil action.

We do not think that the process for pursuing an ECOA claim under § 15.52 is an "administrative appeal procedure" within the meaning of § 6912(e). An ECOA claim under § 15.52 is not an "appeal" of a USDA program action. It is a separate determination of a complaint regarding discrimination in USDA's administration of its programs. The premise of an ECOA claim is that there has been a final agency determination on the underlying decision regarding the loan or benefit. Significantly, the decisions applying § 6912(e) to date all have involved

---

[10] Because this provision was not enacted until October 1994, it provides no grounds for tolling the statute of limitations on claims that accrued before October of 1992.

appeals of USDA decisions under statutes and programs administered by the USDA. *See Bastek v. Federal Crop Ins. Corp.*, 975 F. Supp. 534 (S.D.N.Y. 1997) (farmers must appeal deduction of salvage value and market price calculation in indemnity to Risk Management Agency); *In re Cottrell*, 213 B.R. 33 (M.D. Ala. 1997) (exhaustion applies to Rural Housing Services procedures, which are covered by National Appeals Division); *Calhoun v. USDA Farm Serv. Agency*, 920 F. Supp. 696 (N.D. Miss. 1996) (exhaustion applies to failure to give former owner preference in foreclosure sale where he could have appealed to National Appeals Division); *Gleichman v. USDA*, 896 F. Supp. 42 (D. Me. 1995) (plaintiffs must appeal suspension of participation in Rural Housing Service programs to Administrative Law Judge as provided in 7 C.F.R. § 3017.515 (1995)). We have found no decision that does not involve implementation of a USDA program.

We note that if § 6912(e) were found to apply to complaints under § 15.52, it would bar any plaintiff who has filed an administrative complaint from bringing suit under ECOA in the district court until USDA takes final action on the complaint. Because § 6912(e) places no time limits on the procedures established by the Secretary, moreover, plaintiffs could be barred from court for an indeterminate period of time. While we have found nothing in the legislative history of § 6912(e) that elaborates on its intended purpose, it seems unlikely that Congress intended such a result. The better interpretation, we believe, is that § 6912(e) applies to administrative procedures related to statutes or programs administered by USDA. Accordingly, § 15.52 is a permissive procedure, and filing an administrative complaint would not toll the statute of limitations.

## B. *Equitable Tolling & Equitable Estoppel*

We next consider the application of equitable principles to these claims. Courts have attempted to distinguish the doctrine of equitable tolling from that of equitable estoppel by noting that equitable tolling principally "focuses on the plaintiff's excusable ignorance of the limitations period" and the "lack of prejudice to the defendant" while equitable estoppel "usually focuses on the guilty actions of the defendant." *See Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995) (quoting *Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir. 1981)).

### 1. *Equitable Tolling*

In *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), the Supreme Court held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants . . . appl[ies] to suits against the United States." *Id.* at 95–96. However, "[f]ederal courts have typically extended equitable relief only sparingly" in suits against private parties, and "it is evident that

no more favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants." *Id.* at 96. In *Irwin*, the Court observed that equitable tolling has been found where "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* (footnotes omitted). Courts have been less forgiving of "late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Id.*

### a. *Is ECOA Subject to Equitable Tolling?*

We thus begin with the presumption that equitable tolling applies to ECOA's statute of limitations, and consider whether there is "good reason to believe that Congress did *not* want the equitable tolling doctrine to apply in a suit against the Government." *United States v. Brockamp*, 519 U.S. 347, 347 (1997). In *Brockamp*, the Court concluded that Congress did not intend for equitable tolling to apply to the time and related amount limitations for filing tax refund claims. The Court noted that "[o]rdinarily limitations statutes use fairly simple language, which one can often plausibly read as containing an implied 'equitable tolling' exception." *Id.* at 350. The limitations provision at issue in *Brockamp*, 26 U.S.C. § 6511 was quite different. It set forth its time limitations "in a highly detailed technical manner" and imposed substantive limits on the amount recovered that were related to the time limitations. *Id.* In addition, the statute contained exceptions with special time limit rules for six types of claims, none of which addressed equitable tolling. Reading an implied equitable tolling provision into that statute, the Court observed, would work "linguistic havoc." *Id.* at 352. Moreover, tax law is not "normally characterized by case-specific exceptions reflecting individualized equities." *Id.*

In contrast, ECOA's statute of limitations is relatively straightforward:

> No such action shall be brought later than two years from the date of the occurrence of the violation, except that—
>
>> (1) whenever any agency having responsibility for administrative enforcement under section 1691c of this title commences an enforcement proceeding within two years from the date of the occurrence of the violation,
>> (2) whenever the Attorney General commences a civil action under this section within two years from the date of the occurrence of the violation,
>
> then any applicant who has been a victim of the discrimination which is the subject of such proceeding or civil action may bring

an action under this section not later than one year after the
commencement of that proceeding or action.

15 U.S.C. § 1691e(f). The structure of § 1691e(f) is more similar to the limitation
provision in Title VII, to which the Court found equitable tolling applied in *Irwin*,
than it is to the statute at issue in *Brockamp*. Like Title VII, moreover, ECOA
is a remedial statute amenable to exceptions for individualized equities. Section
1691e(f) does contain explicit exceptions to the limitation period. But the excep-
tions in ECOA are not as numerous or as intricate as those in the provision in
*Brockamp*. In addition, the exceptions in ECOA extend the limitations period to
allow a plaintiff who becomes aware of discrimination after the government com-
mences enforcement proceedings to bring an action. This purpose is not incon-
sistent with applying equitable tolling to the limitation period. We therefore con-
clude that ECOA's statute of limitations is, in appropriate circumstances, subject
to the doctrine of equitable tolling.

### b. *Is Equitable Tolling Warranted for these Claims?*

The application of the equitable tolling doctrine depends on the facts of each
case. "The Supreme Court has suggested in *Baldwin County Welcome Ctr. v.
Brown*, 466 U.S. 147 (1984) (per curiam), that courts may properly allow tolling
where 'a claimant has received inadequate notice, . . . where a motion for
appointment of counsel is pending and equity would justify tolling the statutory
period until the motion is acted upon, . . . where the court has led the plaintiff
to believe that she had done everything required of her, . . . [or] where affirmative
misconduct on the part of a defendant lulled the plaintiff into inaction.' '' *Mondy
v. Secretary of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988) (quoting *Baldwin*,
466 U.S. at 151 (citations omitted)). Courts have found notice inadequate where
an agency fails to provide a claimant with notice required by statute. *See Coles
v. Penny*, 531 F.2d 609, 614–17 (D.C. Cir. 1976) (statute of limitations tolled
where EEOC failed to provide notice of right to sue as required by statute) (inter-
preting *Gates v. Georgia-Pacific Corp.*, 492 F.2d 292 (9th Cir. 1974) (tolling
statute of limitations where EEOC failed to provide notice of right to sue required
by its regulations)). In addition, failure to meet a statutory deadline '' 'may be
excused if it is the result of justifiable reliance on the advice of a government
officer.' '' *Bull S.A. v. Comer*, 55 F.3d 678, 681 (D.C. Cir. 1995) (quoting *Jarrell
v. United States Postal Serv.*, 753 F.2d 1088, 1092 (D.C. Cir. 1985)). A final
factor that courts have considered is whether the plaintiff was represented by an
attorney. Courts are less likely to find equitable tolling if the plaintiff has legal
representation. *See, e.g., Kelley v. NLRB*, 79 F.3d 1238 (1st Cir. 1996) (no tolling
where NLRB employee erroneously informed attorney that NLRB would serve

defendant with charges because represented plaintiffs generally deemed to have constructive knowledge of regulatory requirements).

USDA has suggested, in particular, that the D.C. Circuit's decision in *Bull S.A.* might support an equitable tolling argument for the ECOA claimants. In *Bull S.A.*, the court held that a corporation justifiably relied on a sealed Certificate of Renewal for its trademark which stated that the renewal would last twenty years from May 15, 1972. In fact, the renewal should have run from May 15, 1971. The corporation missed the 1991 renewal deadline but applied within the proper time had the renewal in fact expired in 1992. *Bull S.A.*, 55 F.3d at 682. In finding that the period of renewal on Bull's trademark should be equitably tolled, the court stated that "Bull received an official government document, published under the signature and Seal of the Commissioner, that *certified* a renewal lasting until May 15, 1992. Once in receipt of this document, and, . . . absent any circumstances that would alert Bull to the error, Bull was entitled to rely on its validity." *Id.*

As a general matter, USDA has suggested that claimants may be able to argue that they justifiably relied on the conduct of USDA officials to conclude that filing an administrative complaint tolls ECOA's statute of limitations. The conduct in question includes failing to alert claimants of their right to pursue immediate relief under ECOA; inviting claimants to submit claims for compensatory damages upon a finding of discrimination; and engaging in settlement negotiations regarding damages. Because there is no legal requirement that the government provide potential ECOA plaintiffs with notice of the right to file a civil action, ECOA claimants will have difficulty asserting inadequate notice as a grounds for equitable tolling. *Compare Coles*, 531 F.2d at 614–17. Absent a more specific government statement that the filing of an administrative complaint tolled the limitations period on an ECOA civil action, it is unlikely that a court would find such conduct sufficient to apply equitable tolling. However, the application of the doctrine to a particular case will depend on the facts present in that case.

## 2. *Equitable Estoppel*

"The doctrine of equitable estoppel is not, in itself, either a claim or a defense. Rather, it is a means of precluding a litigant from asserting an otherwise available claim or defense against a party who has detrimentally relied on that litigant's conduct." *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988). While the Supreme Court has not foreclosed the possibility that equitable estoppel may lie against the United States, "it is well settled that the Government may not be estopped on the same terms as any other litigant." *Heckler v. Community Health Servs.*, 467 U.S. 51, 60 (1984) (footnote omitted). In fact, the Supreme Court has reversed every finding of equitable estoppel requiring the payment of money by the United States that it has reviewed. *See OPM v. Richmond*, 496

U.S. 414, 427 (1990); *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947). Thus, "despite the doctrine's flexibility in disputes between private parties, its application to the government must be rigid and sparing." *ATC*, 860 F.2d at 1111.

A party seeking to assert estoppel against the government must do more than establish the traditional private law elements of the doctrine, which are " 'false representation, a purpose to invite action by the party to whom the representation was made, ignorance of the true facts by that party, and reliance.' " *See id.* The litigant must also demonstrate that the government engaged in some sort of "affirmative misconduct," *OPM*, 496 U.S. at 421, and that there will be no "undue damage" to the public interest. *ATC*, 860 F.2d at 1111–12. Accordingly, reliance on a government official's misstatement is not sufficient to estop the United States. Because "parties dealing with the government 'are expected to know the law and may not rely on the conduct of Government agents contrary to law,' " *id.* at 1111 (quoting *Heckler*, 467 U.S. at 63), "there is no grave injustice in holding parties to a reasonable knowledge of the law." *Id.* at 1112.

Courts require special rigor in examining claims that would estop the government so as to entitle claimants to monetary payments not otherwise permitted by law. This concern is grounded in the principle of separation of powers. For "[i]f agents of the Executive were able, by their unauthorized oral or written statements to citizens, to obligate the Treasury for the payment of funds, the control over public funds that the [Appropriations] Clause reposes in Congress in effect could be transferred to the Executive." *OPM*, 496 U.S. at 428. Moreover, "Congress has always reserved to itself the power to address claims of the very type presented by [a claimant arguing estoppel], those founded not on any statutory authority, but upon the claim that 'the equities and circumstances of a case create a moral obligation on the part of the Government to extend relief to an individual.' " *Id.* at 431 (referring to congressional reference cases and private legislation procedures).

A plaintiff seeking to estop the government from asserting the statute of limitations in these cases might make two arguments. First, claimants might argue that USDA's actions led them to believe its administrative process tolled the running of the statute of limitations on a civil action. Second, plaintiffs might argue that USDA told them that it would settle their claims in an administrative process, or led them to believe that relief would be available in the administrative process even if the statute of limitations ran on a judicial action. This belief, in turn, may have lulled claimants into believing that they would be compensated by USDA and that it therefore was unnecessary to seek relief in court.

Neither of these arguments is likely to succeed in the absence of affirmative misconduct by the government. To qualify as affirmative misconduct, a government official's conduct must amount to "more than mere negligence, delay, inaction, or failure to follow an internal agency guideline." *Ingalls Shipbuilding, Inc. v. Department of Labor*, 976 F.2d 934, 938 (5th Cir. 1992) (quoting *Mangaroo*

*v. Nelson*, 864 F.2d 1202, 1204–05 (5th Cir. 1989)). Courts look for evidence that an official's misstatement was made with "knowledge of its falsity or with intent to mislead." *United States v. Marine Shale Processors*, 81 F.3d 1329, 1350 (5th Cir. 1996). We are unaware of any allegation that any USDA official knowingly misled these claimants. At most, it appears that any statements or impressions were based on the official's mistaken interpretation of the law. Courts have been unwilling to estop the government in circumstances where individuals relied on advice provided by government officials who would have been expected to have the relevant knowledge and authority. *See OPM*, 496 U.S. at 420 (employee's erroneous advice that income will not cause reduction in benefits does not estop government from reducing benefits); *Merrill*, 332 U.S. at 385–86 (government agent's erroneous advice that farmer's entire crop was insured does not estop government from denying benefits on crops excluded from coverage by statute); *Ingalls*, 976 F.2d at 937 (government cannot be estopped from assessing penalties for a delay in payment even though a deputy commissioner sent plaintiff a letter excusing any delay in payment); *ATP*, 860 F.2d at 1111–12 (SBA's assurance that it would guarantee payments of section 8(a) borrower was unauthorized and therefore cannot estop government). To our knowledge, the alleged government conduct at issue here is similar to that deemed insufficient to establish estoppel in these cases. However, the application of equitable estoppel to a specific case will depend on the facts present in that case.

## V. Conclusion

ECOA's statute of limitations applies to both administrative and litigative settlements of ECOA claims, and it may not be waived by the executive branch. Because USDA's authority to pay compensatory damages is derived from the fact that a court could award such damages, USDA may not settle administrative claims after the statute of limitations has run. Section 3702 of title 31 does not provide an independent basis of authority for the payment of administrative claims filed after expiration of the ECOA statute of limitations. As for tolling, filing an administrative claim does not toll the statute of limitations on a civil action. While ECOA is subject to claims of equitable tolling or equitable estoppel in appropriate circumstances, courts have rarely applied either doctrine against the United States.

DAWN JOHNSEN
*Acting Assistant Attorney General*
*Office of Legal Counsel*